**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**JEAN GELIN,**

    **Plaintiff,**

**v.**                                                              **CASE NO:**

**ADAPTIVE BIOTECHNOLOGIES CORPORATION**

    **Defendant.**

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, JEAN GELIN, (hereinafter "Plaintiff" or "Mr. Gelin"), a Florida resident, by and through the undersigned counsel, hereby sues Defendant, ADAPTIVE BIOTECHNOLOGIES CORPORATION (hereinafter "Defendant," or "Adaptive Biotechnologies") and alleges:

**INTRODUCTION**

1. The Plaintiff brings this action against Defendant, his former employer, seeking to recover damages for unlawful discrimination based on age and retaliation in violation of the Age Discrimination in Employment Act of 1967 (ADEA).

2. As further set forth below, Plaintiff alleges that Defendant

unlawfully discriminated against him, altered the terms, conditions, and privileges of his employment because of his age, and retaliated against him in violation of his rights under the ADEA.

3.     As a direct and proximate result of unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, he has suffered and continues to suffer loss of his professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. §§ 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division. All facts and circumstances arising from this dispute took place in Pasco County, Florida.

## PARTIES

8.      Plaintiff is a 64-year-old male.

9.      Plaintiff is a member of a class protected against discrimination and retaliation based on his age under the ADEA.

10.     During the period from June 13, 2022, until September 7, 2023, Defendant employed Plaintiff, who worked remotely from Wesley Chapel, Florida.

11.     At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.     At all times material herein, Plaintiff was an employee entitled

to protection as defined by the ADEA.

13. The Defendant, ADAPTIVE BIOTECHNOLOGIES CORPORATION, is a Foreign Profit Corporation with a principal place of business located at 1551 Eastlake Ave. E., Suite 200, Seattle, WA 98102.

14. At all times material herein, Defendant regularly conducted, and continues to conduct, business throughout Pasco County, Florida.

15. At all times material herein, Defendant met, and continues to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the ADEA.

16. Accordingly, Defendant is liable under the ADEA for the unlawful discrimination and retaliation to which it subjected Plaintiff.

## ADMINISTRATIVE PREREQUISITES

17. Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

18. On December 21, 2023, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendant alleging, among other things, age discrimination and retaliation.

19.   On December 29, 2023, the EEOC issued Plaintiff a Notice of Right to Sue in reference to his Charge of Discrimination (EEOC Charge No. 551-2023-06282) against Defendant.

20.   All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

21.   On June 13, 2022, Mr. Gelin began his employment with Adaptive Biotechnologies as a Director of Cloud Operations. Mr. Gelin worked remotely from Wesley Chapel, Florida. Mr. Gelin initially worked under the supervision of Senior Office Director of IT David Arbo, but in or about March 2023, Mr. Gelin began reporting directly to Chief Technology Officer Yi Zhou.

22.   In June 2023, Mr. Gelin got promoted to the position of Director of Platform Engineering.

23.   Mr. Gelin excelled at his job and consistently contributed to the company's success. As a Director of Platform Engineering, Mr. Gelin developed and implemented a comprehensive three-year technology roadmap for a high-performing platform team, successfully led a group of 12 engineers, oversaw the re-architecture of an antiquated Microsoft Azure

environment, achieved a significant $1.4 million in annual cloud cost savings, achieved a 99.99% uptime for critical services, oversaw the implementation of all aspects of IT Service Management practices, etc.

24. In May 2023. Mr. Gelin's manager, Yi Zhou, told Mr. Gelin to choose one member of his team to be let go as part of a company-wide cost reduction effort. Mr. Zhou instructed Mr. Gelin to use "poor performance" as the sole criterion for their termination, giving Mr. Gelin no say in the matter. Mr. Gelin thus reluctantly decided to terminate Craig Flanick. Mr. Gelin did so based on Mr. Flanick's documented performance issues, missed deadlines, ineffective communication, and complaints from co-workers about his lack of professionalism.

25. Baseless rumors started to circulate around the company that Mr. Gelin chose to terminate Craig Flanick due to a personal dislike.

26. In response to the rumors, the company hired a third-party lawyer to investigate Mr. Flanick's termination.

27. Mr. Gelin vehemently denied these allegations during a meeting with Mr. Zhou and Yana (LNU) from HR, clarifying that he adhered to performance-related criteria. In fact, Mr. Gelin's original plan, as documented in the management platform Lattice, was to help Mr. Flanick

by setting clear goals around what Mr. Flanick needed to do to improve; Mr. Gelin did not plan on terminating Mr. Flanick. The goals Mr. Gelin produced for Mr. Flanick included working on his communication with his manager, submitting weekly status reports, honing his people skills for better interaction with his peers, improving his skillset by becoming a certified Azure Cloud Solutions Architect, etc. Ms. Yana, who guided Mr. Gelin during the layoff process, can vouch in Mr. Gelin's favor, as she witnessed firsthand Mr. Gelin's dedication and performance-driven decision-making during the layoff process. Additionally, the layoff list had been openly discussed in a staff meeting prior to Mr. Flanick's termination, and neither Mr. Zhou nor any of the HR representatives objected to it.

28. To build relationships with Mr. Zhou's direct reports, Mr. Gelin held weekly 1:1 meetings with Chris Youmans, Charlie Nelson, Brian Davis, and Ravi Chandu. In August 2023, during one of these meetings with Mr. Youmans, Mr. Gelin provided a status report on the platform team, and Mr. Youmans expressed concern about the lack of an automation plan. Mr. Gelin assured Mr. Youmans that the plan was in progress and that it would be shared when ready. Mr. Gelin then requested that Mr. Youmans also share his project plan for better alignment. However, Mr. Youmans' response was

condescending and dismissive in nature, stating that "the plan is out there." Mr. Gelin addressed Mr. Youmans' response as disrespectful and talked to him about the importance of feedback and proper communication for personal growth. Mr. Gelin also explained that he would improve his own communication and apologize if someone else had an issue with his communication style.

29.     This was not the only time Ms. Youmans acted dismissive towards Mr. Gelin. During a LabVantage meeting, Mr. Youmans singled out Mr. Gelin for an incorrect project plan, even though it was not Mr. Gelin's fault. In response, Mr. Gelin suggested a more collaborative approach to the situation instead of pointing fingers at others.

30.     Additionally, Mr. Gelin observed a consistent pattern of Mr. Youmans congratulating other teams in cross-functional success emails but remaining silent whenever Mr. Gelin's team achieved success.

31.     Eventually, Mr. Gelin noticed that Mr. Youmans' negative communication style, which hindered open dialogue, led some teams to exclude him from their staff meetings. Thus, in July 2023, Mr. Gelin raised his concerns to Ms. Yana via email and formally filed a complaint against Mr. Youmans.

32.     Coincidentally, on September 7, 2023, not long after he filed that complaint, Adaptive Biotechnologies terminated Mr. Gelin. When Mr. Gelin asked why they had terminated his employment they stated it was "voluntary."

33.     Following Mr. Gelin's termination, the Platform team, which comprised of both DevOps and Cloud Operations, was divided into two separate teams.  DevOps was given to Nilgoun Raihani, (Assistant Director of QA) and the other was given to Ivan Lujanovic (Sr. Manager of Infrastructure), despite both being much younger and less experienced than Mr. Gelin.

## COUNT I
## AGE DISCRIMINATION IN VIOLATION OF ADEA

34.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

35.     Plaintiff's age was a determining factor in Defendant's decision to terminate him.

36.     Defendant knowingly and willfully discriminated and retaliated against Plaintiff based on his age in violation of the ADEA.

37.     As a direct and proximate result of Defendant's conduct described herein, Plaintiff has suffered from a loss of income and benefits for all of which he should be compensated.

**WHEREFORE**, Plaintiff, JEAN GELIN, demands judgment against Defendant and requests the following relief:

A.     Back pay;

B.     Front pay;

C.     Liquidated damages pursuant to 29 U.S.C. § 626(b);

D.     Attorney's fees and costs; and

E.     Other such relief as may be appropriate to effectuate the purposes of the ADEA.

## COUNT II
## VIOLATION OF ADEA (RETALIATION)

38.     Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 33 of this Complaint as though fully set forth herein.

55. Plaintiff, a person above the age of 40, is a protected employee under the ADEA. But for his age, Plaintiff would have been treated differently by Defendant during his employment.

56. In July 2023, Mr. Gelin raised his concerns to Ms. Yana via email and formally filed a complaint against Mr. Youmans.

57. Mr. Gelin's complaint to Ms. Yana against Mr. Youmans constitutes protected activity.

58. Defendant took an adverse employment action against Plaintiff when they terminated his employment, after he complained.

60. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages.

61. Accordingly, Plaintiff is entitled to damages to the fullest extent permitted by the ADEA.

**WHEREFORE**, Plaintiff, JEAN GELIN, demands judgment against Defendant and requests the following relief:

A.   Back pay;

B.   Front pay;

C.   Liquidated damages pursuant to 29 U.S.C. § 626(b);

D.   Attorney's fees and costs; and

E.   Other such relief as may be appropriate to effectuate the purposes of the ADEA.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Date this 28th day of March 2024.

*/s/ Jason W. Imler, Esq*
Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez, Esq.
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Attorneys for Plaintiff